No. 35,686

THE CITY OF CHETOPA, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LABETTE (JAMES REED, RAY MOORE and O. B. HELMS, as County Commissioners, etc.), *Appellant*.

(130 P. 2d 614)

Opinion filed November 7, 1942.

*Glenn Jones,* county attorney, and *Jack L. Goodrich,* assistant county attorney, were on the briefs for the appellant.

*Elmer W. Columbia,* of Parsons, and *Hugh Randall,* of Chetopa, were on the briefs of the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action wherein the city of Chetopa seeks to recover from the board of county commissioners of Labette county for money it claims should have been apportioned it pursuant to G. S. 1935, 68-506e, for the maintenance of streets that were connecting links in the county highway system. Judgment was for the plaintiff, striking out certain paragraphs of the answer of the county commissioners. The defendants have appealed.

After the formal allegations the petition set out chapter 230 of the Laws of Kansas for 1929, being section 68-506e of the General Statutes of Kansas for 1935. That section will be set out hereafter. The petition further set out that the above statute was in effect and made it mandatory upon defendents to pay the plaintiff $250 per mile for the maintenance of city streets which were used as connecting links in the system of highways of the county; that defendant had never made any payments to the city pursuant to the statute, even though it had received all the funds due it from the state of Kansas; that no duty rested upon the plaintiff to make demand for this payment and that a claim had been made therefor in Feb-

ruary, 1940, and the claim was unpaid. The petition further alleged that certain streets, five in number, of the city of Chetopa, were connecting links in the county highway system, and that in the aggregate the county commissioners from 1933 to 1942 should have paid the city $10,385.39. Judgment was prayed for this amount.

The answer of the board of county commissioners first denied that some of these streets were connecting links in the county highway system and then alleged in paragraph 7 that plaintiff had received payment for any claims it had against the defendants for the maintenance of any streets located in it pursuant to the terms of a resolution adopted by the board of county commissioners on July 20, 1934; that by that resolution the defendants exercised their election to operate under the provisions of G. S. 1935, 68-416, and G. S. 1935, 68-424, and that this election was made at the request of plaintiff, together with other cities of the county. A copy of this resolution was attached to the answer.

The answer also alleged in paragraph 8 that the plaintiff in good conscience ought not to be permitted to recover under the provisions of G. S. 1935, 68-506e, for the reason that it had requested defendant to set aside 35 percent of the county and township road fund, as provided by G. S. 1935, 68-424, and that this action had been taken after a meeting between the board of county commissioners and the city authorities, and that at that time the city authorities knew of the provisions of G. S. 1935, 68-506e; that since July 20, 1934, plaintiff had received payment direct from the state treasurer for its proper share of the funds so set aside; that since July 20, 1934, plaintiff had received the benefit of the money obtained from that fund and no claim was filed prior to filing this suit, and that up to the time this claim was filed plaintiff had not made demand from defendant, and that defendant in good faith, relying on the resolution adopted July 20, 1934, had collected only 65 percent of the fund and made no provision for paying plaintiff pursuant to G. S. 1935, 68-506e, and that money received by the defendant pursuant to G. S. 1935, 68-416, had been budgeted and spent, and at the time plaintiff requested defendants to adopt the resolution referred to defendant was under no obligation to set aside for plaintiff any money of the fund, but defendant in good faith had performed this part of the resolution, and that by reason of these facts the plaintiff was estopped from making any claim against defendant for $10,385.39, for the reason it would be unconscionable and inequitable to defendant and that the defendant would suffer great loss and damage.

The plaintiff moved to strike paragraph 7 and paragraph 8 from the answer.

This motion was sustained by the trial court. Hence this appeal.

It will be noted that the defendant attempted in paragraph 7 to present the defense that by complying with G. S. 1935, 68-424, it was excused from complying with the provisions of G. S. 1935, 68-506e; that the second defense raised by the answer was a defense of estoppel and that the third defense was one of laches. All three of these defenses were stricken out by the court so that the question to be decided by this court on appeal is whether the county was entitled to raise any of those three defenses.

This will require an examination of the pertinent statutes.

The first statute we shall consider is G. S. 1935, 68-506e. That section of chapter 230 of the Laws of 1929 provides as follows:

"That the board of county commissioners of each county shall annually apportion and distribute quarterly to each city on the county highway system from the fund known as the county and township road fund at the rate of two hundred fifty dollars ($250) per mile for the maintenance of the streets in such cities used as connecting links in the system of county highways which are not connecting links in the state highway system, said moneys to be credited to the street and alley fund of such cities. In lieu of said apportionment the board of county commissioners may maintain in cities of the third class such streets and pay for such maintenance from the county and township road fund." (§ 1.)

This act took effect on April 1, 1929.

It is the above statute upon which the plaintiff has based this action. Attention is called to the use of the words "county and township road fund" and to the fact that the statute directs that the county commissioners shall "apportion and distribute" certain money from that fund.

The next statute we shall consider is G. S. 1935, 68-416, especially subparagraph (2) of that section. For a history of the evolution of the section see section 7 of chapter 255 of the Laws of 1927 and section 17 of chapter 225 of the Laws of 1929 and section 1 of chapter 241 of the Laws of 1933.

The subparagraph with which we are to deal was enacted in 1929, has not been amended, and is a part of section 17 of chapter 225 of the laws at that session. It provides as follows:

"(2) The sum of $800,000 quarterly up to April 1, 1930, and the sum of $900,000 quarterly on and after April 1, 1930, shall be transferred by the state treasurer from the highway fund into a fund known as the county and township road fund, which shall be distributed to the 105 counties as follows: 40

percent shall be distributed equally to the 105 counties of the state and 60 percent shall be apportioned and distributed to the 105 counties of the state in proportion to the assessed valuation based upon the preceding year's assessment. The fund thus distributed to the various counties shall be used for the construction, improvement, reconstruction and maintenance of county and township roads and bridges at the option of the county commissioners: *Provided,* That not less than 50 percent of said fund shall be used on township roads and bridges and shall be divided among the various townships in each county in the proportion that the mileage of township roads in the various townships bears to the total mileage of township roads in the county: *Provided,* That in counties which have adopted the county unit system said fund shall be divided between the county road fund and the county bridge fund in such proportion as the board of county commissioners shall determine. From and after April 1, 1929, the state highway commission shall not have any jurisdiction or control over any roads or bridges except on the state highway system, or the funds hereunder distributed to counties for county and township roads, or other road funds available to the counties and townships."

This statute took effect April 1, 1929.

Attention is called to the fact that this section provided for a transfer of certain funds from the highway fund into a fund known as the "county and township road fund."

This was the first time that any provision was ever made for such a fund as a county and township road fund. The preceding sections of chapter 225 and the enactments by preceding legislatures, of which chapter 225 was in a large part an amendment, had created a highway fund to consist of the money received by the state from motor vehicle registration fees and motor fuel taxes.

The distribution provided for in subparagraph (2) of section 17 of chapter 225 of the Laws of 1929 was the result of a composing of the differences of opinion that had arisen between the thickly populated larger counties and the less thickly populated counties with not so high an assessed valuation as to how this money which was to be raised from the above sources was to be distributed. Also interested in this matter were the various boards of county commissioners of the state and others charged with the construction and maintenance of county roads. It must be remembered that in 1929 the state was just getting well under way on its program of constructing and maintaining a state highway system. The motor fuel tax money and the motor-vehicle registration money was making a new source of revenue available. Every board or commission charged with the duty of constructing or maintaining roads wanted some of it. Hence the arbitrary sum of $900,000 quarterly was fixed and it was provided that 40 percent of it would be distributed

equally among the 105 counties, so that Morton county would receive out of the 40 percent of that $900,000 exactly the same share as Wyandotte county, while on the other hand, 60 percent of the fund would be divided on the basis of assessed valuation. It should be noted that the paragraph proceeded to provide how this money should be spent, that is, not less than 50 percent of it should be spent on township roads and bridges so that the officials charged with the duty of maintaining the township roads would receive a fair division. It should be noted further that in counties which had adopted the county unit system the funds should be divided between county road funds and the county bridge funds as the county commissioners should determine.

It must be borne in mind that chapter 255 of the Laws of 1927 and chapter 225 of the Laws of 1929 were comprehensive enactments to govern the entire subject of setting up the machinery for the construction and maintenance of a state highway system by the state. The enactment of chapter 225 of the Laws of 1929 had been carried out with some difficulty, due to the fact that the road building organization up to that time had been the several boards of county commissioners. When the state highway fund became available there was a great mileage of county and township roads which many people were as anxious to see built as they were the state highway system. This caused the enactment of subparagraph (2) of G. S. 1935, 68-416. That was the way provided by the legislature for some of the money raised from gasoline taxes and motor vehicle license taxes to be diverted to the construction and maintenance of county and township roads.

There was, however, another group of interested officials which had more or less influence with the legislature—that was the city officials. This subparagraph (2) had not made any provision whereby cities would receive any of the money that was raised by the tax on gasoline and motor vehicle license. Hence, chapter 230 of the Laws of 1929, being House bill No. 468, was introduced. That was G. S. 1935, 68-506e, the statute which was first set out in this opinion.

House bill No. 210 for 1929, being chapter 225 of the Session Laws, was approved February 22, 1929. House bill 468 of the session for 1929, which became chapter 230 of that session, was introduced February 18, 1929. It is easy to deduce from that legislative history that after the house bill that was to be chapter 225

.had passed all the legislative hurdles and was about ready to be signed by the governor, the advocates of the plan that some of the gasoline tax and motor vehicle license money should go to the cities to help them maintain the connecting links in the county highway system over their streets caused the introduction of house bill 468. It must be remembered in this connection that chapter 225 provided that cities should receive $250 a mile for connecting links in the state highway system, as distinguished from the county system.

All this history is of interest because it leads inescapably to the conclusion that the fund referred to as the "county and township road fund" in chapter 225 and again in chapter 230 of the Session Laws of 1929 was one and the same fund, and that no money reached it from any other source than the transfer to it by the state treasurer from the highway fund, which was comprised wholly of money paid into it from the collections of motor vehicle fuel taxes and motor vehicle license money. There are levies, of course, for township road funds and for county road funds and bridge funds, but they are not part of the "county and township road fund," as the phrase is used in these sections. It is a distinct fund that exists only by virtue of the statutes, reference to which has been made, and consists entirely of money to which reference has been made.

This brings us to the statute which the defendants pleaded in their answer, that is, chapter 94 of the Laws of the Special Session for 1933, or G. S. 1935, 68-424.

The title of that chapter is so interesting that it will be set out here. It is as follows:

"An act providing for an apportionment of the county and township road fund, derived from special taxes on motor vehicles and on motor fuels, as provided in subsection (2) of section 1 of chapter 241, Laws of 1933, and amendments thereto, to counties and cities for road and highway purposes in the construction, maintenance, and operation of county roads and city streets, avenues and boulevards, authorizing the issuance of bonds to be paid out of the apportionment provided herein or by tax levy in a certain contingency, and requiring preference for labor to be given persons who are on the relief rolls of the county."

Attention is called to the fact that the title refers to an apportionment of the "county and township road fund." Section 1 of the act provides as follows:

"That thirty-five percent or so much thereof as may be necessary of the county and township road fund, derived from special taxes on motor vehicles and on motor fuels, as provided in subsection (2) of section 1 of chapter 241,

Laws of 1933, and amendments thereto, which is $900,000 per quarter or $3,-600,000 per year, may be, upon resolution duly adopted by the board of county commissioners of any county, set aside to be used for road and highway purposes in the construction, maintenance, and operation of county roads and township roads and city streets, avenues or boulevards, by the county or city respectively, or to pay bonds and interest thereon issued for such purposes as hereinafter provided: *Provided,* That preference shall and must be given for labor in such construction, maintenance and operation, to persons on the relief rolls of the county who are physically able to and will work on such construction, maintenance and operation: *Provided further,* That any county taking advantage of this act shall expend fifty percent of the county's share of said funds set aside or raised under this act on township roads except in counties operating under the county unit system of highways.

"The thirty-five percent shall be, after the resolution above provided for has been adopted, apportioned among the county and the cities of the county on a basis of population, the population as determined by the federal census of 1930 to be the populations used hereunder, and the population of the county outside the limits of cities to be considered as the population of the county. Said thirty-five percent shall be distributed and paid over to the county and cities, or held to pay bonds as hereinafter provided, by the state treasurer at the quarterly distribution as provided by subsection (2) of section 1 of chapter 241, Laws of 1933, and amendments thereto. The remaining sixty-five percent shall be distributed to the county and by the county distributed to the county and township as provided by subsection (2) of section 1 of chapter 241, Laws of 1933, and used for the purposes therein specified."

It is too plain to admit of debate that the fund of which a 35 percent was to be used is the fund referred to in chapters 225 and 230 of the Laws of 1929, being subparagraph (2) of G. S. 1935, 68-416, and G. S. 1935, 68-506e, respectively. That is the "county and township road fund."

The defendants pleaded in their answer that they had proceeded pursuant to the provisions of chapter 94 of the special session laws of 1933. The resolution attached to their answer and adopted by them was in the words of that statute and the answer alleged that they had followed the statute. We must assume for the purpose of this opinion that such is the case. Their position is that having proceeded pursuant to that act they were not bound to apportion the $250 per mile which was provided for in chapter 230 of the Laws of 1929. Chapter 94 of the Special Session Laws of 1933 and chapters 225 and 230 of the Laws of 1929 all deal with the disbursement of the same fund, that is, the county and township road fund. They must be construed together. It does not seem likely that the legislature would provide that the county commissioners could take

35 percent of the county and township road fund and spend a certain amount of it on the maintenance of city streets and still be bound to apportion the same amount for the maintenance of connecting links that they would have been bound to apportion had they not proceeded under chapter 94. If the construction of the three statutes contended for by plaintiff is correct the county would have to apportion the same amount to cities from this county and township road fund, even though it had only 65 percent of it left after having complied with chapter 94. A much more logical conclusion is that the legislature intended that when a board of county commissioners saw fit to proceed under chapter 94 of the Laws of the Special Session of 1933 and set aside 35 percent of its "county and township road fund" and allowed it to be spent on all the city streets, as provided by that act, the operation of chapter 230 of the Laws of 1929 was suspended.

Certainly all three statutes which deal with the apportionment of the county and township road fund should be construed together. Chapter 94 of the Special Session of 1933 is the latest expression of the legislature on the subject. The language of the concluding sentence of section 1 of chapter 94 is persuasive on this point. That language is as follows:

"The remaining sixty-five percent shall be distributed to the county and by the county distributed to the county and township as provided by subsection (2) of section 1 of chapter 241, Laws of 1933, and used for the purposes therein specified."

The effect of that provision is that after the 35 percent had been used as provided the remaining 65 percent should be distributed to county and townships as provided by subsection (2) of section 1 of chapter 241 of the Laws of 1933, which is the same as subsection (2), G. S. 1935, 68-416, or subsection (2) of chapter 225, section 17 of the Laws of 1929.

Having reached this conclusion, we hold that the defense pleaded by paragraph 7 of the answer of defendants should not have been stricken out.

The defendants attempted to plead in paragraph 8 of their answer that the city was estopped from making its claim and had waived its claim by laches. In view of the conclusion we have reached as to the defense which the defendants pleaded in the seventh paragraph of their answer, it is not necessary for us to consider the question of whether or not paragraph 8 should have been stricken.

Therefore, the question as to whether or not paragraph 8 stated a proper defense for defendants will not be treated.

The judgment of the lower court is reversed with directions to set aside its order striking paragraph 7 from the answer of defendant and to proceed with the trial of the cause.